**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MARVELL TECHNOLOGY, INC.,<br><br>　　　　　Defendant. | Civil Action No. 7:25-cv-00354<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant Marvell Technology, Inc. ("Defendant" or "Marvell") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.　This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Reference |
|---|---|---|---|
| 1. | 7,027,465 | Method for Contention Free Traffic Detection | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7027465 |
| 2. | RE44,904 | Method for Contention Free Traffic Detection | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/RE44904 |

|   | Patent No. | Title | Reference |
|---|---|---|---|
| 3. | 6,832,249 | Globally Accessible Computer Network-Based Broadband Communication System with User-Controllable Quality of Information Delivery and Flow Priority | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/6832249 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4. Defendant Marvell Technology, Inc. is a corporation organized under the laws of the state of Delaware with a principal place of business at 5488 Marvell Lane, Santa Clara, California 95054, and can be served through its registered agent Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904.

5. Defendant has a business location in this Judicial District in Austin, Texas at 5113 Southwest Parkway, Travis Oaks Building, 350, Austin, Texas 78735. *See Corporate Offices*, MARVELL (last visited August 17, 2025), *available at* https://www.marvell.com/company/offices.html.

6. On information and belief, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with its products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

7. CommWorks repeats and re-alleges the allegations in paragraphs 1-6 above as though fully set forth in their entirety.

8. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9. Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; and (iii) having an interest in, using or possessing real property in Texas.

10. Specifically, Defendant has done business in and has committed acts of infringement in this District directly, through intermediaries, by contributing to and through their inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this District.

11. Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District. For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established distribution channel with the knowledge or understanding that such products are being sold in this District and the State of Texas. Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which

Defendant derives substantial revenue from goods sold to residents and consumers.

12. Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Western District of Texas, and Defendant has committed acts of infringement in the Western District of Texas, has conducted business in the Western District of Texas, and/or has engaged in continuous and systematic activities in the Western District of Texas.

13. Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district as to Defendant at least because Defendant has transacted business in this District and committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.

14. On information and belief, as identified above in paragraph 5, Defendant has a business location in this Judicial District in Austin, Texas at 5113 Southwest Parkway, Travis Oaks Building, 350, Austin, Texas 78735 and has numerous employees in Texas. *See Marvell Careers*, MARVELL (last visited Aug. 17, 2025), *available at* https://marvell.wd1.myworkdayjobs.com/en-US/MarvellCareers/details/Advanced-Package-Technology-Principal-Engineer_2500918?Country=bc33aa3152ec42d4995f4791a106ed09&State_Region_Province=fc77e3a1ab36487f9646d14f7242dd77 (listing several job openings at Marvell's Austin office).

15. On information and belief, Defendant has authorized sellers and sales representatives that offer and sell products identified in this Complaint throughout the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District.

## THE ACCUSED PRODUCTS

16. CommWorks repeats and re-alleges the allegations in paragraphs 1-15 above as though fully set forth in their entirety.

17. Defendant uses, causes to be used, manufactures, provides, supplies, or distributes Marvell's chips and/or devices such as:

- Marvell equipment, including, as a non-limiting example, Marvell's chips with IEEE 802.3ah support such as the exemplary Marvell Alaska (e.g., the 88E3015, 88E3016, 88E3018, 88E1510, 88E1518, 88E1512, and 88E1514); Link Street (88E6096 (e.g., the 88E6096-TAH1)); 88E6097 (e.g., the 88E6097-A2-TAH1), 88E6097F (e.g., the 88E6097F-LG01); 88E6092 (e.g., the 88E6092-A2-TAH1C000); 88E6095 (e.g., the 88E6095-A0-TAH-1000); 88F6601; the Marvell Avanta Family; and 88E6095F (e.g., the 88E6095F-A3-LG01); and

- Marvell equipment, including, as a non-limiting example, Marvell's chips with Wi-Fi Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary Marvell 88W8686 (e.g., the 88W8686-B13CBB1-B115-T, 88W8686-B2-NAP1C000); 88DE3100 (e.g., the 88DE3100-Z2); MC-85 (e.g., the UAY-MMC85M); and MC8687P (collectively, the "Accused Products").

18. On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

19. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,027,465**

20. CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

21. For purposes of this Count I, the term "Accused Products" shall include Defendant's N Marvell equipment, including, as a non-limiting example, Marvell's chips with Wi-Fi

Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary Marvell 88W8686 (88W8686-B13CBB1-B115-T, 88W8686-B2-NAP1C000), 88DE3100 (88DE3100-Z2), MC-85 (UAY-MMC85M), and MC8687P (collectively, the "Accused Products").

22. The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986 which was filed on June 11, 2002. The '465 patent is entitled "Method For Contention Free Traffic Detection."

23. CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

24. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent.

25. The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

26. The written description of the '465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27. For example, at the time of the invention, "conventionally … transmission

differentiation based on priority was not conducted at all." '465 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outermost headers, until the right field in the header had been found. *Id.* at col. 1:53-59. This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 1:62-65. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 1:66-2:4. Such a huge amount of information was typically too heavy to handle in small and low-price equipment like WLAN access points (AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:11-15.

28.  The invention of the '465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:19-23, 2:60-62, 3:43. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:53-56. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 2:63-66, col. 3:5-11. A further

advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network.  *Id.* at col. 3:12-21.

29.     Defendant has directly infringed one or more claims of the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

30.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in **Exhibit A** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,027,465).

31.     On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection.

32.     For example, as detailed in **Exhibit A**, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network.  The method for detecting priority of data frames comprises the step of extracting a bit pattern from a predetermined position in a frame.  *Id.*  The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern.  *Id.*  The method for detecting priority of data frames further comprises the step of identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.*  In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame.  *Id.*

33.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:  <u>INFRINGEMENT OF U.S. PATENT NO. RE44,904</u>

34. CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

35. For purposes of this Count II, the Accused Products include Defendant's Marvell equipment, including, as a non-limiting example, Marvell's chips with Wi-Fi Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary Marvell 88W8686 (88W8686-B13CBB1-B115-T, 88W8686-B2-NAP1C000), 88DE3100 (88DE3100-Z2), MC-85 (UAY-MMC85M), and MC8687P (collectively, the "Accused Products").

36. The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014.  The '904 patent is entitled "Method For Contention Free Traffic Detection."

37. CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

38. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

39. The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

40. The written description of the '904 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41. For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '904 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outermost headers, until the right field in the header had been found. *Id.* at col. 1:63-2:2. This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 2:5-8. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 2:8-14. Such a huge amount of information was typically too heavy to handle in small and low-price equipment like WLAN access points (AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:20-25.

42. The invention of the '904 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:29-32, 3:2-4, 3:52-53. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring

knowledge of the upper layer protocols. *Id.* at col. 2:62-65.  The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 3:5-8, 3:14-21.  A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:22-31.

43. Defendant has directly infringed one or more claims of the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

44. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

45. On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '904 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection.

46. For example, as detailed in **Exhibit B**, Defendant, using the Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising: extracting a bit pattern from a predetermined position in a frame; comparing said extracted bit pattern with a search pattern; identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern; forwarding said received frame to a high priority queue in case said received frame is detected to be a high priority frame during a special period for sending priority

traffic; and adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames. *Id.*

47. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 6,832,249</u>

48. CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

49. For purposes of this Count III, the term "Accused Products" include Defendant's Marvell equipment, including, as a non-limiting example, Marvell's chips with IEEE 802.3ah support such as the exemplary Marvell Alaska (88E3015, 88E3016, 88E3018, 88E1510, 88E1518, 88E1512, and 88E1514), Link Street (88E6096 (such as 88E6096-TAH1), 88E6097 (such as 88E6097-A2-TAH1), 88E6097F (such as 88E6097F-LG01), 88E6092 (such as 88E6092-A2-TAH1C000), 88E6095 (such as 88E6095-A0-TAH-1000), 88F6601, Marvell Avanta Family, and 88E6095F (such as 88E6095F-A3-LG01) (collectively, the "Accused Products").

50. The USPTO duly issued U.S. Patent No. 6,832,249 (the "'249 patent") on December 14, 2004, after full and fair examination of Application No. 09/860,801 which was filed May 18, 2001. The '249 patent is entitled "Globally Accessible Computer Network-Based Broadband Communication System with User-Controllable Quality of Information Delivery and Flow Priority."

51. CommWorks owns all substantial rights, interest, and title in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce the '249 patent against infringers and to collect damages for all relevant times.

52. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '249 patent.

53. The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. At the time of the invention, millions of Internet users being online simultaneously, thereby causing congestion (too many users) and latency (long pauses and delays), presented a difficult bandwidth load management challenge. '249 patent at 1:32-34, 2:34-36. No conventional routing system existed that avoided the congestion and best effort delivery methods then used by the Internet. *Id.* at 2:8-10. Conventional routing systems relating to multiple OSI layers also did not consistently ensure quality of service. *Id.* at 6:53-63.

54. The invention of the '249 patent improved upon the conventional services delivery systems by enabling quality of service control by content providers, Application Service Providers (ASPs), ISPs, and, by extension, their customers. *Id.* at 3:60-63. Additional improvements over the conventional services delivery systems afforded by the invention of the '249 patent included bridging the gaps between the layers of the OSI reference model; ensuring more control by users over the priority of their information flow; more control by network administrators over the congestion of their networks; and more control by content providers over costs and the experiences they provide to their users. *Id.* at 3:65-4:2, 6:53-63.

55. Defendant has directly infringed the '249 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

56. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 11 of the '249 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,832,249).

57. On information and belief, Defendant has infringed the '249 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

58. For example, as detailed in **Exhibit C**, Defendant has infringed at least claim 11 of the '249 Patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a method for providing broadband communications over a multi-layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein, comprising: monitoring at least one OSI reference model layer functioning in the multi-layered network; determining that a quality of service event has occurred in the multilayered network; determining that the quality of service event occurred at a layer N in the OSI reference model; responding to the quality of service event in the multi-layered network by changing network provisioning at a layer less than N; and signaling that the network provisioning at the layer less than N has been changed.

59. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

60. CommWorks hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

61. CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

b. Judgment that Defendant accounts for and pays to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

c. Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d. That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

e. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 18, 2025

Respectfully submitted,

By: /s/ James F. McDonough, III

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863, -1862
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541; (737) 304-8481
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC*

\* Admitted to the Western District of Texas

**List of Exhibits**
A. Evidence of Use Regarding U.S. Patent No. 7,027,465
B. Evidence of Use Regarding U.S. Patent No. RE44,904
C. Evidence of Use Regarding U.S. Patent No. 6,832,249

**List of Attachments**
- Civil Cover Sheet